**In re SAND N' SURF, INC., Debtor.**

**J.M.S. MANUFACTURING CORP.,
Plaintiff,**

**v.**

**SAND N' SURF, INC. and Norman
Ackerman, Trustee of Estate of
Sand N' Surf, Inc., Defendants.**

**Bankruptcy No. 80–00298K.
No. 80–0086K.**

United States Bankruptcy Court,
E. D. Pennsylvania.

Aug. 24, 1981.

I. Sidney Sherwin, Philadelphia, Pa., for plaintiff.

Norman Ackerman, Philadelphia, Pa., trustee/defendant.

Henry Wessel, Philadelphia, Pa., for debtor/defendant.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

On February 14, 1980, Sand N' Surf filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code. At that time, the debtor had in its possession several thousand items of swimware which it was processing for the plaintiff, J.M.S. Manufacturing Corporation.[1] On February 28, 1980, plaintiff filed a complaint with this court seeking the reclamation of all of the swimware in the debtor's possession. After a series of negotiations, counsel for the plaintiff and the trustee in bankruptcy entered into an agreement on March 14, 1980 which provided for the reclamation of the swimware by the plaintiff upon the payment of $2,000.00 to the trustee; that sum representing the agreed upon value of the work done by the debtor on the swimware. After a thorough appraisal of its financial dealings with the debtor, the plaintiff discovered that it was actually owed the sum of $4,848.37 which had been advanced by the plaintiff to the debtor prior to the time of bankruptcy. The plaintiff now asks this court to vacate the order providing for the payment of $2,000.00 to the trustee, and to direct the trustee to return the sum of $2,000.00 to J.M.S.

The issues before the court are: 1) whether the agreement of March 14, 1980, should be rescinded on the ground that both parties were mutually mistaken as to the amount of money owed by the plaintiff to the debtor for labor costs, and 2) whether the payment of $2,000.00 by J.M.S. to the trustee in bankruptcy resulted in the unjust enrichment of the bankruptcy estate thereby necessitating the rescission of the agreement of March 14, 1980 and the return of the $2,000.00 from the trustee in bankruptcy to the plaintiff.

We conclude that the facts of the case do not support the plaintiff's contention that the parties to the March 14th agreement were mutually mistaken as to the amount of money owed by the plaintiff to the debtor for labor costs and that, if there was a mistake at all, it was an unilateral mistake on the part of the plaintiff which affords no basis for rescission. Furthermore, we conclude that the bankruptcy estate was not unjustly enriched through the agreement of March 14, 1980.

It has long been recognized that a court, sitting in equity, will decree the rescission of a contract only on the grounds of fraud, duress, or mutual mistake. *Yard v. Patton*, 13 Pa. 278 (1850). In the instant case, the plaintiff alleges that it and the trustee in bankruptcy were mutually mistaken as to the extent of their reciprocal financial obligations at the time of their agreement of March 14, 1980. We do not agree. The facts of the case and testimony taken at trial clearly indicate that there was a genuine dispute between the parties concerning the value of the work performed by the debtor upon the plaintiff's goods. The agreement of March 14th pertained exclusively to the disputed value of that labor and in no way was it intended as a final settlement of the parties' mutual financial obligations.

The agreement in question was essentially a compromise between the parties as to the value to be assigned to the debtor's labor; a compromise which was intended "to resolve the said dispute and avoid unnecessary and further costs of litigation."[2] In respect to mutual mistakes in compromise agreements, Corbin states:

... where parties are consciously disputing an issue and agree upon a compromise in order to settle it, they are making no mistake as to the matter at issue and thus settled. There must be a mistake as

---

1. This Opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 752.

2. Stipulation between the parties to settle the complaint, entered March 14, 1980, p. 2.

to matters that were not not at issue and were not compromised in order that the settlement may be avoidable on the grounds of mistake. 6 Corbin, Contracts § 1292 (1963)

There is insufficient evidence to convince this court that the trustee believed that the agreement of March 14, 1980 was a general settlement of all outstanding accounts between the debtor and the plaintiff.

■■■ We conclude that if there was a mistake at all, it was not mutual, but wholly unilateral on the plaintiff's part. The plaintiff readily admitted at trial that at the time of the signing of the March 14th agreement, it had only made a cursory determination of its possible indebtedness to the debtor; its major priority at the time was to obtain the expeditious release of the goods which were in the debtor's possession. In its haste to do so, the plaintiff failed to adequately evaluate its financial relationship to the debtor. In cases of unilateral mistake, equitable relief by rescission will normally be granted only when the following conditions are present:

1) the mistake is of such consequence that enforcement would be unconscionable.

2) the mistake must relate to the substance of the consideration, that is a material feature.

3) The mistake must have occurred regardless of the exercise of ordinary care.

4) It must be possible to place the other party in status quo."

*Kenneth E. Curran, Inc. v. State*, 106 N.H. 558, 215 A.2d 702 (1965).

From the foregoing, it seems evident to this court that if there were a mistake at all, it arose from the plaintiff's laxity in assessing its financial position prior to entering into the agreement of March 14, 1980. While this court fully realizes the urgency under which the plaintiff was acting, we are in no position to rescind valid contracts simply because one party subsequently discovers that it failed to appraise itself of certain available facts which would have affected its decision to enter into that contract. Unilateral mistakes, which arise through no fault of the other party, but simply through the mistaken party's own negligence or want of due care, afford no basis of relief via rescission. *Marmon Philadelphia Co. v. Blocksom*, 103 Pa.Super. 542, 157 A. 510 (1931).

■■■ The plaintiff also contends that failure by this court to rescind the agreement of March 14, 1980 will result in the unjust enrichment of the bankrupt estate in that the plaintiff will be forced to pay twice for the same labor. Again, we do not agree. In the rather lax financial arrangement which existed between the parties, the plaintiff periodically forwarded funds to the debtor at its request to help meet various operational expenses. However, there never seemed to be any contract or even an explicit understanding between the parties that such funds were to be exclusively used by the debtor to set off labor costs incurred through the processing of the plaintiff's goods. On the contrary, the debtor's president admitted at trial that the funds used to pay general operational expenses which included expenses not associated with labor and even expenses unrelated to the debtor's work on the plaintiff's goods. Seemingly, the plaintiff never specified to the debtor that these funds were to be used solely to pay off the labor costs on its goods. In general, this court finds that the facts are insufficient for us to conclude that all the funds forwarded to the debtor by the plaintiff were used exclusively by the debtor to set off the cost of labor involved in the processing of the plaintiff's goods.

The agreement of March 14, 1980 is a binding legal contract entered into by both parties under the guidance of competent counsel. Upon the payment of $2,000.00 to the trustee for labor costs, the plaintiff obtained the timely release of its goods which were valued at well over $100,000.00. As is stated by Corbin:

Assuming a valid contract to have been made, it is certain that a defendant is bound neither to make restitution nor to pay damages if he has rendered in full

the performance that he promised. It is not enough for the plaintiff to show that its value has turned out to be less than he expected or that the terms of the agreement now appear to have been more advantageous to the defendant than to himself. 5 Corbin Contracts § 1104 (1963).

The Restatement of Restitution is also unequivocal on this point: ... "a person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed between them, the other should give in return." *Restatement of Restitution* § 107 Comment on Subsection (1) (1937). Therefore, we find no basis in either law or fact to support the plaintiff's contention that the bankrupt estate was unjustly enriched through the agreement of March 14, 1980.

---

1. This Opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 752.