## Bamberger et al. v. Home Owners Guide Publishers, Inc.

*Barnie F. Winkelman* and *Madison S. Dubois*, for complainants.

*Jacob K. Miller* and *Levi, Mandel and Miller*, for defendant.

BLUETT, J., November 1, 1948.—Plaintiffs had signed contracts for advertising in a so-called "Classified Directory, Home Owners Guide Publishers, Inc.". The bill of complaint alleges that the contract was arranged in such a manner as was calculated to confuse, deceive and mislead complainants into the mistaken belief that the contracts were renewals of their current advertisements in the Bell Telephone directory; that the contracts did deceive and mislead complainants into believing that the contracts concerned the Bell Telephone directory; that the enforcement of the contracts would be unconscionable and inequitable, and that complainants did not have an adequate remedy at law, as there would be a multiplicity of vexatious suits, and the nature of the contracts could only be shown with great difficulty in a single suit. It asks that the contracts be cancelled and defendants restrained from taking any actions to enforce them.

Preliminary objections to the bill were filed:

1. That only three of plaintiffs have signed sworn affidavits as to the truth and correctness of the bill (this was cured by the filing at bar of the affidavits of the other five plaintiffs in the case).

2. That complainants have an adequate remedy at law.

3. That no specific grounds for equitable relief are set forth.

4. That complainants failed to allege fraud or other grounds for equity jurisdiction.

These preliminary objections are now before the court for determination.

As to the second objection that complainants have an adequate remedy at law, the court is of the opinion that complainants do not have such an adequate remedy. Actions at law would require them to wait until separate actions were brought by defendant to collect on the contracts, and then to defend each separate suit would only result in a multiplicity of actions which each defendant separately would be obliged to defend.

The third and fourth objections may be grouped into one: that as complainants failed to allege fraud, accident or mistake, the court is without equity jurisdiction.

It is not necessary for the bill to expressly state that there was fraud, accident or mistake in the procuring of the contracts. This is a conclusion to be drawn from the facts in the case.

A set of circumstances as set forth in the bill of complaint, if proved, would tend to show that fraud, accident and mistake were committed. If the facts as alleged in the bill are proved, the fraud would be in the misrepresentation of the intent of the contract, and the mistake of fact was apparently planned by and known to defendants, as would be evidenced by the manner of procuring the contracts for advertisements.

A mistake of fact known to and induced by the other party would make the contract so procured voidable: Restatement of the Law of Contracts §§476, 503, 505; Cook v. Liston, 192 Pa. 19; Sutton v. Morgan et al., 158 Pa. 204.

Defendant has referred to the doctrine of "supine negligence" but these cases deal with oral contracts, and on the face of them they were valid. In the present case the contract is in writing but in its entirety contains a representation which was calculated to deceive,

and because of which it is claimed the court has the right to avoid.

In the instant case, the contract refers to "classified directory", the advertisement is cut out of the yellow sheets of the Bell Telephone Classified Directory, attached by "scotch tape" to the white paper contract, and the rates of advertising are about the same as in the Bell Telephone Classified Directory. The contracts were sent to complainants about the time their ads in the telephone directory were ending and the renewal thereof was due.

In this busy workaday world, it would be easily probable for one receiving such a contract through the mail to have the mistaken belief that the contract was a renewal form for the Bell Telephone directory, and one would, in the hurry of the present-day business, either sign the order or contract, or tell someone else to do so. This would not seem to be supine negligence.

In the case of Consolidated Home Specialties v. Plotkin, 358 Pa. 14 (1947), the questions were as to unfair competition, trade name infringement, and the tendency to deceive the public. Chief Justice Maxey uses the following language:

" 'It is not necessary that the Complainant, in order to succeed, should prove actual fraud by the defendant, or that any single person was deceived. It is sufficient if, in the opinion of the judge, the symbol or device or get-up used by the defendant is one which so closely resembles the symbol, device, or get-up used by the Complainant as to be likely to deceive the public'." and cited with approval from the Michigan Law Review of 1910, vol. 8, p. 613, as follows:

" 'The person to be considered, the courts say is not . . . the expert or the careful person, but the normal, everyday purchaser, or, as some judges have designated him, . . . the inattentive purchaser . . . or the unwary purchaser . . . He is likely in making his

purchase to act on the moment and is not bound to study or reflect. . . . He is not supposed to know that imitations exist. . . . Some courts have gone so far as to hold that he has a right to be careless and that the use of a mark or label will be enjoined where deception is a probable or even a possible consequence."

In the instant case, it is the opinion of the court that the "symbol, device or get-up," used by defendants was likely to deceive the public. The directory of defendants claims to have 10,000 circulation, whilst the Bell Telephone directory had a circulation of 650,000. Defendant's directory has 63 pages of advertisements identical in form, size and color to the advertisements in the Bell Telephone directory. Copies of defendant's directory containing the 63 pages of advertisements were submitted to the court, and from an examination of them it would seem to be clear that there is no value in the circulation of these books as compared with those of the Bell Telephone directory, and that the whole scheme was conceived and prepared for the purpose of deceiving and misleading complainants into believing they were advertising in the Bell Telephone directory. If the allegations contained in the bill in equity are proved, the whole scheme would seem to be calculated to deceive and mislead and would constitute a fraud upon complainants, and ought not to be sanctioned by our courts.

Defendant contends that as signatures were obtained to written contracts, the contracts are binding and the courts cannot examine the methods by which the signatures were obtained. We do not agree with this contention. To do so would rather put a premium on fraud than to try to prevent it or give relief against many misrepresented and fraudulent transactions. It would be unconscionable to permit or encourage recovery on contracts fraudulently obtained. The language used in the case of Rosenfeld v. Oleck, 261 App.

Div. (N. Y.) 296 (1941) and the case of Independent Directory Corp. v. North Side Electric Co., Supreme Court of Appeals of Virginia, June 9, 1948, is pertinent to the instant case. For the purpose of considering these preliminary objections the allegations of the bill in equity must be taken as true.

The court is of the opinion that the allegations are sufficient to give a court of equity jurisdiction to determine any issues that may arise in the case, and are sufficiently set forth to enable defendant to make answer thereto.

The preliminary objections are overruled, with leave to defendant to file answer to the bill within 20 days.